Good morning, Your Honor. Frank Sproul is appearing before the petitioner. At the outset, in terms of a complexity, that was a tough act to follow. However, I'll soldier on. I think it's incumbent in this particular case to obviously address the jurisdictional issue first before the merits, although I will hopefully demonstrate that the jurisdictional and the merits are different. The merits are intertwined. My essential point was the petitioner was denied the right to counsel by the failure to serve my office with the order of deportation, the denial of the motion to reopen. That we have to take as a given. There is abundant circumstantial evidence of it. I surrendered my client, and I would never have done that without filing a state. I've been toiling in these vineyards for 15 years. I would never do such a thing. We have three declarations of counsel. He was not served the order. Now, I believe once you take that as a given, we have to turn to the Singh case. That's the one case that says even where there's physical removal, habeas jurisdiction still exists. And they found two separate points that rendered the deportation in Singh unlawful. They weren't disjunctive. They were separate. And if I may, if I could quote from the Singh case. Well, here, once the I.J. denied Carrillo's motion to reopen, the government had a right, had the right to execute the final order. So there was no illegal deportation. No, no question. But if I'm not served, I have a right, just as Singh was in absentia order, just like this case. I have a right to appeal the I.J.'s denial. And I have a right to ask for a stay of deportation. And this is key. But the government is not prohibited from executing the order of removal. That's the point. So the government did nothing wrong in executing the order of removal. Well, you mean the deportation officers? Yeah, right. Okay. But I mean, obviously, the two are way. We're talking about the court failing to provide me with the decision. One. Number two, and this is key as well, in Singh, he had the fortuity of it was an I.J. case. So the counsel was able to run to the court with a handwritten motion and a request for a stay. I, unfortunately, had a court 3,000 miles away. I presented the deportation officers with a FedEx waybill demonstrating that we had sent it. Now, I submit to this Court that when an appellate court is 3,000 miles away, a FedEx filing is not a constructive filing, it's an actual filing. And they were on notice. I mean, again, I think we can't simply divorce the failure to provide counsel with a decision. Notice and opportunity to be heard. I mean, that's fundamental to the Singh decision. It's fundamental to civil law principles. As far as the custody issue, then, doesn't really matter whether it's pre- or post-AEDPA with respect to Singh, or does it? No. Absolutely not. I mean, I think this turns on the question of was the deportation order lawful when, and again, I'm not turning really to the deportation officers, although it's a subsidiary issue that they were on notice, they had filed a stay, but the fact that the petitioner and counsel were not served a copy of the IJ's order. That has to be a massive due process violation. The right to counsel certainly presumes you're going to receive all relevant orders from the court. That didn't happen here. And again, Singh is very key. In the Singh case, luckily, the counsel was able to get a stay from the immigration judge, and unfortunately, the deportation officers removed them despite the stay. However, Singh is very clear. It says the other reason the removal was unlawful, no notice. I mean, there was a decision in that case. It was many years earlier. The counsel never got it. That happened here. And I think the facts are abundantly clear. Was there anything in the record to indicate that the order was served? I took a look at the citation that was ER 54, which is a photocopy of it. Did the government offer anything other than that photocopy to support the idea of service? No. And in fact, what's quite significant is that that order of the judge was a fact that was requested from the court by the government attorney and the deportation office, suggesting, in my mind, that that order wasn't even mailed to the government attorneys, that it was only in the court file. You'll see that. Is that Evan Frank, the CC person? Right. So suggesting he didn't have it. I mean, I know I didn't get it. And one of the so there we have strong circumstantial evidence, and I never received it, three declarations of counsel. What are you asking us to do? Well, two things. I think in my prayer for relief is to essentially reinstate the judge's order so we can file a timely order. Reinstate which order? Non-protunct the judge's decision. I understand. So we would be timely, one. And two, frankly, return Petitioner at government expense. That's precisely what I'm asking. To do what? To adjudicate. In fact, what we have, the motion to reopen is on appeal. I was going to ask you, is that the, that's the BIA appeal? The BIA, that is still pending. And here's one of the problems. The BIA, I'm waiting for the shoe to drop. They're going to say we don't have jurisdiction because he was physically removed. What's significant in the government response to my appeal, we have the benefit of a couple of cases here from this court which state that being late is not absent. I mean, I believe the likelihood of success is very high. We have If you win at the BIA on that issue, then what happens? The case would be reinstated, and he'd be back before the IJ to have the hearing that he should have had two and a half years ago. Are we dealing with a final agency order then, or is this still at play? Well, if the BIA reopens the case, it's not a final order. I mean, that's under challenge. That's the whole point of the motion to rescind the in absentia order. And the problem, of course, is that my appeal is going to be denied by the BIA because they're going to say, quite properly, he's not here. We don't have jurisdiction. So the key part of my prayer for relief is he needs to be returned. He was unlawfully removed. And again, because of two things, the failure to provide counsel with notice, and, two, would I consider absolute notice that the deportation office received that a stay was in place. What's the nature of his claim that he's entitled to stay here? Well, he was originally scheduled for a hearing on cancellation of removal. He has ten years unlawful presence in the United States. He's a person of good moral character.  Right. Unlawful. Unlawful. So he would be a hardship? It's a hardship question is what you would. That's the hearing he never had. What's his hardship? He has United States citizen children. One has an illness. One is actually quite bright. That's sort of the standard. What would be the hardship if they were forced to return to Mexico? So he has a hearing. He has relief. So that's the underlying posture of the case. That hearing was never held. Why don't you save your two and a half minutes to respond. Why don't I do that? Thank you, Your Honor. We'll see what the, what Ashcroft's representative has to say. Good morning, Your Honor. Alison Dahn, behalf of the Attorney General. Judge Trott, you were absolutely correct. There was no prohibition on removing Mr. Carrillo when he was removed. And in the absence of an unlawful removal, there are no extraordinary circumstances  in which he would have been able to remain in Mexico. So I'm just wondering if you could explain that to me. It's sort of a catch-22, though, because the reason there were, there was no prohibition, but if there was no opportunity to ask for a stay of deportation, you know, then it goes off on its own. So it's kind of a catch-22, isn't it, with back to the notice problem? I don't mind catch-22, Your Honor, as long as we're not going to discuss on the waterfront. The, yes, I agree with the Court. I mean, it is an issue. However, there is nothing in the regulations or the law that requires the Immigration and Customs Enforcement to refrain from removing Mr. Carrillo while he pursues his stay. How about the question of, it's not necessarily that the service was at fault. The question is whether he got to pursue his remedy. He might have lost. He might have, if the stay was denied, be gone anyway, right? He would have been gone anyway. And I respectfully have to disagree with counsel's conclusion that he has a likelihood of success on the merits. An in absentia order of removal was entered because he failed to appear on a timely basis for his hearing. There is one standard and one standard only for reopening following an in absentia order of removal. And that is exceptional circumstances beyond the control of the alien prevented his presence. He has made no showing and no attempt to show that exceptional circumstances prevented his timely presence at his hearing. What might be an exceptional circumstance? A car wreck? An airplane crash? What are those? Those would be good examples, Your Honor. Something that he couldn't control. It is a very stringent standard. How about traffic in one of our big cities? Traffic, Your Honor, that's a difficult circumstance. Perhaps in the court remembers, I don't know if you were present when there was anti-war protests here in San Francisco, and bicycles were circling in the intersection and preventing traffic from getting anywhere in the city. I had to cancel a deposition that day because I couldn't get from one side of the city to the other. That might be an exceptional circumstance. Normal traffic, however, is a different story. You leave early enough. Nowhere, anywhere. Is there any allegation of some kind of a circumstance like this that explains the late arrival? None. In fact, all the alien does is shift to the court the fault for having entered in an absentia order without having waited long enough. All he does is say that it was the immigration court that erred because I was only 15 minutes late. That is not the standard, Your Honor. The standard is whether or not exceptional circumstances prevented him from being there at the time he was supposed to have been there. What else would you like to tell us? I think that's it, Your Honor. I mean, the fact of the matter is it was a lawful removal, and in the absence of an unlawful removal, there is no jurisdiction. Could I ask you the same question I asked the counsel for the appellant? I know that somewhere in your ‑‑ I think it was in your red brief you said that the record indicates that the order was served on September 24th, and when I looked at the page that you referred to, it just includes a photocopy of that order, and I didn't see any showing of service. Did the government not bother to do that, or what was the ‑‑ All there is, Your Honor, when service is made by the immigration court, as I understand it, is a cover letter. That goes with the order, and it is the cover letter that indicates the date on which the mailing was made. But it doesn't show any mailing. I mean, you know, if there's a proof of mailing, it's an easy thing to do. All you need is an affidavit or something, and I saw nothing, at least in this record. Unfortunately, it doesn't appear that the immigration court keeps those sorts of records, Your Honor. Is there any evidence that it's the customary practice of this is how they do their mailing? I don't know that there is. But that's what you usually see, because most people take a bunch of mail, they drop it in the U.S. mail, hope for the best, and then they do provide an affidavit saying, you know, that's our system, it's our regular, ordinary course of business. I was wondering if there was any kind of affidavit or declaration to that effect. No, there wasn't, Your Honor. Okay. Thank you. Do you have any other questions? Thank you. Extremely briefly, Your Honor. One point I have to take issue with, it is axiomatic if the deportation office is served with an unadjudicated request for a stay from the BIA, from the district court, the Ninth Circuit, they are constrained from deporting him until it's adjudicated. Of course, the moment the stay is denied, they can remove him. I don't believe the government is really saying that. If you, you know, and I do quite a few petitions for you. That's a big if, because that didn't happen, and you're saying because we didn't give an I wasn't served. I mean, you know, I can only do so much, right? If I don't have an order, how can I file a stay? I mean, this is usually I'm not the attorney below. This time I was. So, I mean, I believe that's the fundamental original sin in this case. And from there, all the problems flow. Secondly, just very briefly in terms of the failure to appear issue, number one, it says you don't have to show exceptional circumstances. Being late is not absent. That's the law. In terms of the respondent, the alien, he was in our office on time. The attorney had some problems, ran a little late. That was the basis of the motion to reopen. There's hard Ninth Circuit case law that says it would have been reopened. Again, it seems a very sensible decision. Late is not absent. Given the Carthaginian consequences of a final order of removal. So the Ninth Circuit said if you're late, maybe there will be sanctions. The judge won't be happy, but you don't order the alien removed. Thank you. Thank you, counsel. This case is ordered submitted.
judges: Trott, McKeown, Shadur